# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PEOPLES BANK OF THE SOUTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:14-CV-1104 |
| ) | Judge Aleta A. Trauger |
| ) | |
| FISERV SOLUTIONS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Pending before the court is defendant Fiserv Solutions, Inc.'s ("FSI") Motion for Partial Summary Judgment (Docket No. 28), to which plaintiff Peoples Bank of the South ("Peoples") has filed a Response (Docket No. 37), and FSI has filed a Reply (Docket No. 41). For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

This is a breach of contract action. Peoples is a Tennessee banking corporation with its principal offices in Campbell County, Tennessee. FSI is a Wisconsin corporation doing business in Tennessee.

Peoples and Financial Data Technology Corporation ("Fi-Data") entered into a Services Agreement dated July 26, 2007 (the "Services Agreement"). Under the Services Agreement, Fi-Data rendered data processing services to Peoples relating to various accounts maintained by Peoples's customers. The Services Agreement provided that, in the event of termination, Fi-Data would de-convert Peoples's data, and Peoples would pay Fi-Data the de-conversion fees set forth on Schedule A of the Services Agreement. In 2012, FSI purchased certain assets of Fi-Data,

1

including the Services Agreement. In connection with the Fi-Data asset purchase, FSI assumed all obligations of Fi-Data under the Services Agreement.

On September 30, 2008, Peoples and FSI entered into an Electronic Transaction Services Agreement (the "EFT Agreement"). The EFT Agreement had an initial term of sixty-five months.

Peoples terminated the Services Agreement on December 31, 2012.

Peoples terminated the EFT Agreement on January 23, 2013, prior to the expiration of the initial term. Peoples's early termination of the EFT Agreement entitled FSI to early termination fees. FSI asserts that these fees totaled $43,946.00 under the EFT Agreement. *See* Statement of Undisputed Material Facts ("SUMF") No. 11. However, Peoples maintains that FSI subsequently lowered the early termination fees to $38,053.00. *See* Response to SUMF No. 11; Response Br. at p. 4 n.1.

After Peoples terminated the contracts between itself and FSI, FSI de-converted Peoples's data and transferred it to a new service provider effective July 12, 2013. At the time of the de-conversion, Peoples had approximately 15,000 customer accounts. David Reynolds ("Reynolds"), Peoples's president and CEO, testified at deposition that Peoples incurred de-conversion fees under the Services Agreement of at least $5,500, calculated as follows: five categories of customer accounts listed on Schedule A at $500 per category ($2,500); plus 15,000 customer accounts at $0.20 per account ($3,000).

Peoples also entered into several software license agreements (collectively, the "Software License Agreements") with FSI or FSI's predecessor-in-interest. Each of the Software License Agreements required Peoples to pay in advance annual licensing and maintenance fees.

2

Peoples's position as to these fees in this litigation is somewhat murky. On the one hand, Peoples maintains that it only incurred licensing and maintenance fees under the Software License Agreements through the de-conversion date of July 12, 2013. *See* Response to SUMF No. 17 (admitting liability for fees under Software License Agreements through de-conversion date of July 12, 2013); Response Br. at p. 3 (noting that "at most" Reynolds thought Peoples would have to pay license fees only through the conversion date). On the other hand, Peoples also maintains that FSI represented to Reynolds that it would not have to pay these licensing fees at all. *See* Response to SUMF No. 19 (asserting that, at various times, FSI's representatives informed Reynolds that Peoples would not have to pay any license fees); Response Br. at pp. 2-3 (stating same and noting that Peoples had no choice but to pay the license fees in advance under protest and reserve the right to seek a full refund). FSI represents that the pro-rated amount owed by Peoples to FSI for software licensing and maintenance fees through July 12, 2013 was $24,410.50. *See* SUMF No. 19. Peoples has agreed to this calculation in the event it is determined to have incurred pro-rated fees.

Reynolds has also admitted during his deposition that Peoples incurred ATM de-conversion fees in the amount of $2,050, network de-conversion fees in the amount of $2,575, and a charge for "cardbase tapes in EFT format" in the amount of $1,500.

The gist of this action is that Peoples alleges that (1) FSI "held hostage" all of Peoples's de-converted data until and unless Peoples paid FSI many types of excessive and improper fees over the course of the de-conversion process; (2) Peoples paid those fees in order to recover its data, but reserved all rights to seek to recover the fees; and (3) and Peoples now seeks to recover those excessive fee payments from FSI under theories of breach of contract and bad faith. To

3

that end, on December 17, 2014, Peoples filed suit against FSI in Campbell County Chancery Court. (Docket No. 1-1.) FSI removed the action to this court on January 14, 2015. (Docket No. 1.) The Complaint brings five counts against FSI. Count One seeks the return of "$158,700 less legitimate charges" per the Services Agreement for de-conversion fees that Peoples believes it was overcharged. Count Two seeks the return of $11,884.07 of excess de-conversion fees paid under the EFT Agreement. Count Three seeks the return of software licensing fees paid in the amount of $31,277.85. Count Four seeks the return of $10,000 for a "Service Request" that Peoples claims was made pursuant to a contract it never executed. Finally, Count Five alleges a breach of the covenant of good faith and fair dealing imposed by Tennessee law in all contracts.

Peoples filed the pending motion on March 31, 2015. (Docket No. 28.) The court retroactively granted permission for Peoples to do so, upon motion, on April 2, 2015. (Docket No. 36.) On April 24, 2015, Peoples filed its Response. (Docket No. 27.) On April 30, 2015, FSI filed its Reply. (Docket No. 41.) The parties subsequently reported to the court that they had been unable to resolve this dispute through private mediation. The court therefore considers the limited subjects raised in the pending motion for the purpose of narrowing the issues for trial.

## ANALYSIS

In its Motion for Partial Summary Judgment, FSI contends that Peoples has conceded that it undisputedly incurred certain fees, and that those fees should, therefore, be removed from consideration from the total sum that Peoples seeks to recover from FSI at trial.

### A. The Software Licensing Fees

This fee falls under Count Three of the Complaint, by which Peoples seeks reimbursement from FSI for allegedly excess software licensing fees. The Court finds that there

is a dispute of material fact that is sufficient to preclude summary judgment concerning the amount of software licensing fees for which Peoples may be undisputedly liable to FSI (and thus may not recover at trial). Specifically, there are questions of fact as to whether Reynolds was informed by FSI (on more than one occasion) that Peoples would not have to pay the software licensing fees. In short, Peoples will have the opportunity at trial to adduce evidence that FSI had promised that Peoples would be excused from these fees; likewise, FSI will have the opportunity to prove that it invoiced Peoples for these fees and that such promises were never made.

### B. Customer Account De-Conversion Fees

This fee falls under Count One of the Complaint, by which Peoples seeks "$158,700 less legitimate charges" for reimbursement from FSI for allegedly excess customer account de-conversion fees. The court finds that it there is no dispute of material fact that Peoples has incurred $5,500 in customer account de-conversion fees – as conceded by Peoples. Partial summary judgment for FSI is therefore appropriate for this amount. However, no record has been established as to the existence, or lack, of other customer account de-conversion fees relevant to the Fi-Data Agreement. Accordingly, this ruling does not limit Peoples's ability to recover additional amounts under Count One at trial.

### C. Early Termination Fees

The Court finds that there is a dispute of material fact as to the amount of the early termination fees under the EFT Agreement. FSI avers Peoples incurred a fee of $43,946.00. Peoples maintains the fee was lowered to $38,053.00.[1] Given this plain factual disagreement, summary judgment is inappropriate and the issues will be resolved at trial.

---

[1] FSI made no attempt to address this dispute of fact in its Reply.

### D. ATM De-Conversion Fees, Network De-Conversion Fees, Fees for Cardbase Tapes in ETF Format

In the Response, Peoples asserts that "these amounts are not specifically addressed by the Plaintiff in Counts I-IV of its Complaint and were not at issue under those Counts." Response Br. at p. 1-2. Peoples maintains, however, that it seeks recovery of these amounts under Count Five of the Complaint – the "bad faith" breach of the covenant of good faith and fair dealing claim. In short, Peoples asserts that the basis for the bad faith allegation is that FSI was a bad actor that held Peoples's data hostage until Peoples paid all the fees that FSI demanded. Peoples argues that FSI has not met its burden to obtain summary judgment on Count Five.

In Tennessee, a duty of good faith and fair dealing is imposed in the performance and enforcement of every contract. *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) (citing Restatement (Second) of Contracts § 205 (1979)); *Lamar Advertising Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). The purpose of this implied covenant is (1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered. *Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642-43 (Tenn. Ct. App. 2006) (quoting *Goot v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2003–02013–COA–R3–CV, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005)). However, "[t]he implied obligation of good faith and fair dealing does not . . . create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Id.* (quoting *Goot*, 2005 WL 3031638, at *7); *Dick Broadcasting Co., Inc. of Tenn. Oak Ridge F.M., Inc*., 395 S.W.3d 653, 666 (Tenn. 2013); *Lamar Advertising*, 313 S.W.3d at 791.

Here, Peoples has admitted that it legitimately incurred the ATM de-conversion fees, network de-conversion fees, and fees for cardbase tapes in ETF format pursuant to the specific terms of agreements with FSI. The covenant of good faith and fair dealing cannot, therefore, be used to circumvent the specific terms of the parties' agreement regarding these fees, and FSI is entitled to partial summary judgment in the amount of these fees.

## SUMMARY

This Order shall have the following effect:

1. Partial summary judgment is granted to the defendant as to:

   a. $5,500.00 in customer account de-conversion fees

   b. $2,050.00 in ATM de-conversion fees

   c. $2,575.00 in network de-conversion fees

   d. $1,500.00 in fees for "cardbase tapes in EFT format"

   Total: $11,625.00

2. Partial summary judgment is denied as to:

   a. $24,410.50 in software licensing fees

   b. $43,946.00 in early termination fees

3. The total amount sought by Peoples in the Complaint at trial shall be reduced from $201,861.92 to $190,236.92.

4. Trial shall be held on all counts of the Complaint.

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Partial Summary Judgment (Docket No. 28) is **GRANTED IN PART AND DENIED IN PART**.

It is so **ORDERED**.

Enter this 1st day of June 2015.

                                                                                   _____
                                                                                    ALETA A. TRAUGER
                                                                                    United States District Judge