# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| PEOPLES BANK OF THE SOUTH, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 3:14-1104 |
|  | ) | Judge Aleta A. Trauger |
| FISERV SOLUTIONS, INC., | ) |  |
| Defendant. | ) |  |

## MEMORANDUM

Pending before the court is a Motion for Attorney's Fees and Expenses (Docket No. 99) filed by the plaintiff, Peoples Bank of the South ("Peoples Bank"), to which the defendant, Fiserv Solutions, Inc. ("Fiserv"), has filed a Response (Docket No. 102), People's Bank has filed a Supplement (Docket No. 106), and Fiserv has filed a Response to the Supplement (Docket No. 107). For the reasons discussed herein, the Motion will be granted in part and denied in part.

## BACKGROUND & PROCEDURAL HISTORY

On December 16, 2016, following a bench trial, the court issued a Judgment in this action, awarding Peoples Bank $148,700 plus attorney's fees and expenses and ordering Peoples Bank to file a motion for attorney's fees and expenses and Fiserv to file a response. (Docket No. 92.) The Judgment was accompanied by a Memorandum outlining the claims at issue as well as the court's findings of fact and conclusions of law. (Docket No. 91 (the "Prior Opinion").) Familiarity with the Prior Opinion is presumed and a full discussion of the court's holdings will not be repeated herein. Briefly, however, this action involved five separate claims: 1) breach of the parties' "Core Services Agreement," 2) breach of the parties' "EFT Agreement," 3) breach of the parties' "Licensing Agreements," 4) a quasi-contractual or equitable claim based on Fiserv's

1

alleged collection of improper charges related to an anticipated but unexecuted contract between the parties, referred to as the "Accel Network Charges," and 5) breach of the covenant of good faith and fair dealing.

The claim for breach of the covenant of good faith and fair dealing was addressed at summary judgment, when the court held that this claim did not entitle Peoples Bank to any damages beyond those already enumerated under the breach of contract claims (Docket No. 44, pp. 6-7), and Peoples Bank did not pursue this claim at trial. The court dismissed the claim for breach of the EFT Agreement during the pre-trial conference. Peoples Bank then withdrew its claim for breach of the Licensing Agreements at the start of trial. Thus, the only claims that were tried before the court were the claims for breach of the Core Services Agreement and for the Accel Network Charges. Ultimately, the court's judgment in favor of People's Bank was only as to the claim for breach of the Core Services Agreement, and the court found that Peoples Bank was not entitled to any recovery with respect to the Accel Network Charges.

In awarding attorney's fees and costs, the Prior Opinion cited the provision in the Core Services Agreement that entitles the prevailing party to reasonable attorney's fees and expenses arising from an action to enforce the agreement. (Docket No. 91, p. 3.)

Judgment was entered by the clerk of court on December 16, 2016. (Docket No. 93.)

On January 3, 2017, Peoples Bank filed a Motion for Attorney's Fees and Expenses, seeking $37,730 in attorney's fees and paralegal fees plus $5,765.60 in expenses (Docket No. 99), along with a Memorandum in support (Docket No. 100). Attached to the Motion are the Declaration of Conrad Mark Troutman and the first Declaration of Dallas T. Reynolds II ("Reynolds Decl. 1"). (Docket Nos. 99-1, 99-2.)

Dallas Reynolds, of the Knoxville firm Dunn, MacDonald & Reynolds, P.C., is the current counsel of record for Peoples Bank. (Docket No. 99-1, ¶¶ 1-2.) He is a graduate of the University of Tennessee School of Law and has been practicing general civil litigation in Tennessee since 1994. (*Id*. at ¶¶ 3-5.) According to Reynolds Decl. 1, Dallas Reynolds charged Peoples Bank for 98.1 hours of his time at a non-discounted rate of $250 per hour (totaling $24,525) and for 7 hours of time by paralegal Susan Wolfe at a rate of $65 per hour (totaling $455), equaling a fee total of $24,980 for which Peoples Bank now seeks reimbursement. (*Id*. at ¶ 6.) Reynolds Decl. 1 states that the hours for which he charged Peoples Bank were reasonable and necessary for its representation, and that the amount charged per hour is a reasonable rate that is consistent with the market rate for similar legal services in middle Tennessee and with the rate Mr. Reynolds charges other similar clients. (*Id*. at ¶¶ 2, 7, 13.)[1] Dunn, MacDonald and Reynolds, P.C. also charged Peoples Bank $1,167.02 in expenses for which Peoples Bank now seeks reimbursement. (*Id*. at ¶ 11.) Exhibit A to Reynolds Decl. 1 contains itemized bills that show that Peoples Bank was charged for the following legal work by Dallas Reynolds between February of 2016 and December of 2016:

- 9.7 hours of participating in telephone conferences and meetings with Mr. Troutman (former counsel for Peoples Bank on this matter before Dallas Reynolds took over) regarding the location of documents, reviewing of filings in

---

[1] According to Reynolds Decl. 1, this rate is the same rate that Dallas Reynolds generally charges to individuals or companies for commercial litigation, where the clients are not repeat clients receiving volume discounts. (Docket No. 99-1, ¶ 7.) Reynolds Decl. 1 also states that this rate was not increased for Peoples Bank, despite the fact that Dallas Reynolds received the case upon transfer from another attorney and with a lack of written discovery, making this case more difficult to litigate. (*Id*. at ¶¶ 7-9). Finally, Reynolds Decl. 1 states that Dallas Reynolds' bills to Peoples Banks were reviewed to include only charges for work that was necessary and reasonable. (*Id*.)

the docket and deposition transcripts, participating in telephone conferences with the court and David Reynolds (CEO of Peoples Bank), and reviewing the case file and doing legal research, from February through May of 2016.

- 3 hours for meeting with David Reynolds, Chris Cooper, and others at Peoples Bank on May 24, 2016. (The bill reflects that this time was discounted by 50% to $375 instead of $750 or – assuming a rate of $250 per hour – a charge for only 1.5 hours instead of 3.)

- 6.25 hours of meeting with David Reynolds to discuss the claims and legal analysis, reviewing the case file and mediation history, and meeting with Mr. Troutman, in June of 2016.

- 1.9 hours of participating in telephone conferences with opposing counsel, communicating with David Reynolds regarding the case status, participating in a hearing on the continuance of trial and discovery motions, reviewing the court's orders on the continuance of trial and discovery motions, and corresponding with David Reynolds, the court, and opposing counsel, in June and July of 2016.

- 45.4 hours of pretrial preparation, including communicating and meeting with David Reynolds and opposing counsel, reviewing the case file, preparing and reviewing exhibits and depositions, researching evidentiary and substantive issues, preparing proposed findings of fact and conclusions of law, preparing argument and witness examinations, preparing a trial notebook, and conferring on stipulations with opposing counsel, in November and December of 2016.

- 22.5 hours of participating in pre-trial conference and trial (including travel time and a working lunch) on December 2, 5, 6, and 7, 2016.

- 9 hours of post-trial work, including communicating with David Reynolds, corresponding with opposing counsel and the court, conferring with opposing counsel on settlement, and researching and preparing the motion for attorney's fees and supporting documents, in December of 2016.

(Docket No. 99-1, pp. 6-14.)[2] Exhibit A contains itemized bills which show that Peoples Bank was charged for the following services by paralegal Ms. Wolf:

- 2 hours of preparing documents to be submitted to the court on December 4, 2016.
- 5 hours of travelling to and from the court to file documents on December 5, 2016.

(*Id*. at pp. 11-12.) Finally, Exhibit A contains the following breakdown of expenses charged to Peoples Bank:

- $1 for Ms. Wolfe's parking when delivering documents to the court on December 5, 2016.
- $191.16 for mileage reimbursement to Ms. Wolfe for her drive to Nashville on December 5, 2016 (354 miles and $0.54 per mile).
- $768.86 for hotel expenses during the trial.

---

[2] The hours in Exhibit A only add up to a total of 97.75 hours, rather than the 98.1 hours stated in Reynolds's Decl. 1, which, when multiplied by $250 equals $24,437.50 and, minus the $375 discount for the May 24, 2016 meeting, equals $24,062.50. This figure matches the total of all the bills in Exhibit A that were sent to Peoples Bank. It is not at all clear from the record where the additional .35 hours (and associated $87.50) referenced in Reynolds Decl. 1 are drawn from. Nor does Reynolds Decl. 1 account for the $375 discount reflected in the bills. Exhibit A, therefore, only supports costs for Mr. Reynolds's time in the amount of $24,062.50 rather than the $24,525 requested.

- $189 for mileage reimbursement to Dallas Reynolds for travel to Nashville for the trial in December of 2016 (350 miles at $0.54 per mile).
- $17 for parking for Dallas Reynolds while attending the pre-trial conference in December of 2016.

(*Id*. at p. 13).[3] A receipt from the Union Station Hotel attached to Exhibit A confirms the $768.86 in charges to Dallas Reynolds for a stay from December 5 through December 7, 2016, plus overnight valet parking and restaurant charges. (*Id*. at p. 15.)

Mr. Troutman, while working for the LaFollette firm Troutman & Troutman, P.C., was the initial counsel for Peoples Bank in this action, from early 2013 until he withdrew in January of 2016. (Docket No. 99-2, ¶ 1.) Mr. Troutman is a graduate of the University of Tennessee School of Law and was a practicing attorney, handling transactional work and business litigation, from 1985 through January of 2016. (*Id*. at ¶¶ 2-3.) According to Mr. Troutman's Declaration, Troutman & Troutman, P.C. charged Peoples Bank for 51 hours of Mr. Troutman's time, all of which was reasonable and necessary, at a rate of $250 per hour (totaling $12,750). (*Id*. at ¶¶ 4-5.) Mr. Troutman also states in his Declaration that the rate of $250 per hour is reasonable and consistent with the market rate for similar legal services in middle Tennessee and what Mr. Troutman charges other clients. (*Id*. at ¶¶ 3, 7.) Exhibit A to Mr. Troutman's Declaration contains itemized bills that show that Peoples Bank was billed for the following legal work by Mr. Troutman:

- 3.5 hours of participating in conferences and communicating with David Reynolds and Chris Cooper (representative of Peoples Bank), reviewing contracts, and drafting a letter

---

[3] These amounts total $1,167.02 which corresponds to the $1,167 referenced as the amount of expenses sought in Reynolds Decl. 1.

to Fiserv, in March of 2013.

- 1.5 hours of preparating for a conference call in June of 2013.

- .75 hours of drafting the Complaint and doing initial research in August of 2013.

- 4.25 hours of additional researching and drafting and revising the Complaint, in August and September of 2013.

- 5.5 hours of communicating with David Reynolds and Mr. Cooper, preparing and sending the Disclosure, participating in a conference with the court to discuss the initial case management order, and preparing documents, in April and June of 2014.

- 5 hours of preparing for, and participating in, depositions, and participating in a conference with David Reynolds and Mr. Cooper, in March of 2015.

- 5 hours of preparing Response to Fiserv's Motion for Summary Judgment, in April of 2015.

- 14.75 hours of communicating with Peoples Bank and Fiserv regarding mediation, preparing and revising the mediation report and letter, and preparing for, and participating in, mediation, in May of 2015.

- 6 hours of reviewing exhibits, communicating with Peoples Bank, preparing exhibit production, reviewing Fiserv's exhibits, and preparing pretrial order, witness list, exhibit list, and proposed findings of fact, in June of 2015.

- 2 hours of participating in conferences with opposing counsel and preparing a Response to Fiserv's motion for discovery-related sanctions, in July of 2015.

- .25 hours of communicating with opposing counsel regarding depositions, in August of 2015.

- 2.5 hours of participating in conference calls with the court and David Reynolds, communicating with David Reynolds and Robert Echols (mediator), and preparing amended exhibits as per court instructions, in December of 2015.

(Docket No. 99-2, pp. 4-13.)[4] Mr. Troutman's Declaration also states that Peoples Bank was charged $4,598.60 by a mediator to participate in mediation with Fiserv. (*Id.* at ¶ 6.) Exhibit B to Mr. Troutman's Declaration confirms that Troutman & Troutman P.C. was charged $4,598.60 for half of the mediation by mediator Robert Echols of Bass Berry & Sims PLC. (Docket No. 99-2, pp. 14-17.)

On January 13, 2017, Fiserv filed a Notice of Appeal as to the final judgment in this action. (Docket No. 101.)

On January 23, 2017, Fiserv filed a Response in opposition to Peoples Bank's Motion for Attorney's Fees. (Docket No. 102.) While Fiserv concedes that the Core Services Agreement provides for attorney's fees and expenses to the prevailing party, Fiserv argues that Peoples Banks's ability to recover attorney's fees should be severely limited due to the facts that 1) Peoples Bank only prevailed on one of the five claims in its Amended Complaint and 2) Peoples Bank lost, and Fiserv prevailed, on Peoples Bank's claim for breach of the EFT Agreement, and that agreement calls for the prevailing party – in this case Fiserv – to recover its attorney's fees and expenses.[5] According to Fiserv, its right to recover attorney's fees and expenses related to

---

[4] Exhibit A to the Declaration of Mr. Troutman, thus, confirms the statement in the Declaration that Peoples Bank was billed for 51 hours of Mr. Troutman's time at a rate of $250, for a total of $12,750.

[5] Fiserv correctly cites the following provision from the EFT Agreement: "In the event suit, action, litigation or arbitration is instituted to enforce any of the terms of this Agreement, to interpret the terms of this Agreement or to allege any breach of this Agreement, the prevailing party shall be entitled to recovery from the other party its reasonable costs and attorney's fees in arbitration, at trial or on appeal of such suit or action, in addition to all other sums provided by law." (Docket No. 1-1, p. 105.)

the EFT Agreement offsets Peoples Bank's right to recover attorney's fees and expenses related to the Core Services Agreement. Fiserv also argues that the court should decline to award any fees that are duplicative, due to the fact that there was a substitution of counsel for Peoples Bank during the course of this litigation. Finally, Fiserv argues that the court should decline to award any fees or expenses whatsoever due to the complicated nature of determining appropriate fees and expenses for the breach of the Core Services Agreement claim, given the number of other claims in this action. Fiserv does not, however, dispute the reasonableness of the $250 per hour rate charged by counsel for Peoples Bank, nor does it dispute the reasonableness or necessity of any of the individual fees (aside from the duplicity of some) or of the enumerated expenses. Finally, Fiserv does not move for an award of attorney's fees or expenses on the EFT Agreement claim, nor does it provide the court with information about the fees and expenses it incurred related to this claim, other than the general assertion that its fees and costs in this litigation were equal to or greater than those incurred by Peoples Bank.

On February 8, 2017, the court issued an Order declining to review the Motion for Attorney's Fees until the appeal from the final judgment was resolved and ordering the Clerk to term the pending motion. (Docket No. 103.)

On March 24, 2017, the United States Court of Appeals for the Sixth Circuit dismissed the appeal in this action, upon motion for voluntary dismissal by Fiserv. (Docket No. 105.)

On April 11, 2017, Peoples Bank filed a Supplement to its Motion for Attorney's Fees, requesting an additional $2,987.50 in attorney's fees and expenses related to costs incurred in defending against the appeal. (Docket No. 106.) Attached to the Supplement is a second Declaration of Dallas Reynolds, which states that he charged Peoples Bank $2,987.50 for 11.95 hours of reasonable and necessary work on the appeal at a rate of $250 per hour. (Docket No.

106-1 ("Reynolds Decl. 2").) Exhibit A to Reynolds Decl. 2 is an itemized bill showing that Peoples Bank was, in fact, charged $2,987 for 11.95 hours of Dallas Reynolds's work on the appeal, broken down as follows:

- 1.5 hours of communicating with David Reynolds and opposing counsel regarding a potential Motion for New Trial, appeal, motion for attorney's fees, and potential settlement, in January of 2017.

- 7.45 hours of preparing for, and participating in, mediation, including reviewing the mediation statement, preparing filings with the Sixth Circuit, and communicating with David Reynolds and opposing counsel, as well as participating in the mediation itself, in February of 2017.

- 3 hours of participating in conferences with David Reynolds and opposing counsel, reviewing the Local Rules of the Sixth Circuit and Federal Rules of Appellate Procedure, reviewing the transcript and trial materials, and preparing additional filings related to the Motion for Attorney's fees, in March and April of 2017.

On April 25, 2017, Fiserv filed a Response to Peoples Bank's Supplement, reiterating its position that People's Bank should be entitled to just one fifth of its attorney's fees and expenses and that this award should be offset in its entirely by Fiserv's entitlement to attorney's fees on the claim relating to the EFT Agreement. (Docket No. 107.) According to Fiserv, this reasoning extends to attorney's fees incurred in connection with the appeal in this action. Fiserv, again, does not raise any objections to the reasonableness or necessity of the appellate fees requested.

## **LEGAL STANDARD**

In diversity cases, the determination of attorney's fees and costs is governed by state law. *Hometown Folks, LLC v. S & B Wilson, Inc.,* 643 F.3d 520, 533 (6th Cir.2011). Where, as here,

a contract provides for *reasonable* attorney's fees and costs, "[t]he parties are entitled to have their contract enforced according to its express terms," and "it is clear that they expect a court to adjudicate the issue of a reasonable fee." *Wilson Mgmt. Co. v. Star Distribs. Co.,* 745 S.W.2d 870, 873 (Tenn. 1988). The Tennessee Supreme Court has noted that the appropriate factors to consider in determining a reasonable attorney's fee include:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and length of the professional relationship with the client;
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) Whether the fee is fixed or contingent;
> (9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) Whether the fee agreement is in writing.

Tennessee Rule of Professional Conduct ("RPC") 1.5(a); *see also Wright ex. rel. Wright v. Wright,* 337 S.W.3d 166, 176–77 (Tenn.2011). These factors are not exclusive and each factor may not be relevant to every case. RPC 1.5, cmt. 1. Moreover, while a review of these factors should guide a court's analysis, "ultimately[,] the reasonableness of the fee must be based upon the particular circumstances of the individual case." *White v. McBride,* 937 S.W.2d 796, 800 (Tenn. 1996).

## ANALYSIS

There is no dispute that the Core Services Agreement expressly provides for attorney's fees and costs to the prevailing party in a dispute to enforce the agreement and that Peoples Bank

11

has prevailed on its claim against Fiserv for breach of the Core Services Agreement. Fiserv does not challenge the reasonableness of the fees charged by counsel for Peoples Bank, nor does Fiserv challenge the reasonableness or necessity of any of the individual billing entries. Based on the court's independent review of the record, the court finds that the rates charged to Peoples Bank – for attorney's fees and paralegal fees – were reasonable, given the local legal market and the experience of counsel, and that the hours billed were reasonable and necessary for this litigation, as were the expenses charged. Fiserv, however, raises three challenges to Peoples Bank's request for attorney's fees that the court must consider: 1) that Peoples Bank should not be entitled to recover for duplicative work that was generated by Peoples Bank's change of counsel partway through the litigation, 2) that Peoples Bank should be able to recover, at most, one fifth of its fees and costs because Peoples Bank only prevailed on one of five claims in this matter, and 3) that Peoples Bank's fee award should be offset in its entirety because Fiserv also prevailed on one of the five claims, and it is one that would entitle Fiserv to attorney's fees and costs of equal or greater value to those sought by Peoples Bank for that claim. Fiserv also argues that, due to the impossibility of the court parsing out the fees and costs associated with the Core Services Agreement claim from the fees and costs associated with the other claims in this matter, the court should decline to award any fees.[6]

As an initial matter, the court is not persuaded that the inability to precisely parse the fees and expenses among the various claims that were asserted in this action is a basis for denying

---

[6] Finally, Fiserv asserts, as it argued at trial, that Fiserv served Peoples Bank under an unenforceable EFT Agreement for 9 months, during which time it charged Peoples Bank a sub-market rate, despite having no obligation to do so. According to Fiserv, because Peoples Bank has already benefitted from that savings, the court should exercise its discretion to deny Peoples Bank any fee award. The court finds that this factual assertion is both unproven and irrelevant to the issues currently before the court and, accordingly, will not be considered in the court's determination of the instant motion.

Peoples Bank's motion in its entirety. Instead, the court will exercise its discretion to reach a fair calculation of an award, taking into consideration the complexities of the case, as all courts do in fee matters of this sort. As Fiserv correctly points out, a party can only collect fees and expenses associated with a claim on which the party prevailed and for which fees and expenses are provided by contract or by statute; the party cannot collect litigation costs for an entire action simply because it prevailed on one claim among many asserted. *Glanton v. Bob Parks Realty*, No. M2003-01144-COA-R3-CV, 2005 WL 1021559, \*10 (Tenn. Ct. App. Apr. 27, 2015).

The court does not, however, agree with Fiserv that, because breach of the Core Services Agreement was one of five claims brought in this action, Fiserv should be entitled to no more than one fifth of its requested fees and costs. Rather, the court finds that the percentage of the requested fees and costs awarded should correspond with a reasonable determination of the percentage of work attributable to the breach of the Core Services Agreement claim. Fiserv cites *CNB Bancshares, Inc. v. StoneCastle Secs. LLC*, No. 3:09-CV-33, 2013 WL 3770960 (E.D. Tenn. May 22, 2013) for the proposition that the percentage of attorney's fees awarded should be proportional to the percentage of counts in the action on which the party is successful, and not proportional to the percentage of damages sought in the action that the party was awarded. As Fiserv quotes in its briefing, however, the *CNB* opinion expressly states that the reason the percentage of fees awarded for a particular claim is not based on the percentage of damages associated with that claim is because "the dollar amount of damages claimed does not have a direct correlation to the time spent on a claim." *CNB*, 2013 WL at \*6. The fact that the claim on which Peoples Bank prevailed was one of five claims in this matter, likewise, does not prove that only one fifth of the work done in this litigation is attributable to that claim.

13

The court, thus, finds that the percentage of the requested fees that should be properly attributed to the claim for breach of the Core Services Agreement should be based on the court's determination of the percentage of the work in this litigation that can be reasonably attributed to that claim. This figure, further, varies depending on the timing of the work for which the fees were generated. First, once the trial ended, the claim for breach of the Core Services Agreement was the only claim for which the court's final judgment was subject to challenge on appeal and for which the parties were ordered to file a briefing related to attorney's fees and expenses. Accordingly, the court finds that Peoples Bank should be entitled to recover 100% of the fees it requests for post-trial and appellate work. Based on the bills enumerated above, this totals $5,237 ($2,250 for the 9 hours of post-trial work by Dallas Reynolds in December of 2016 that is enumerated in Exhibit A to Reynolds Decl. 1 plus $2,987 for the post-trial and appellate work done by Dallas Reynolds in January through March of 2017 and enumerated in Reynolds Decl. 2.

Next, for the work done during the pre-trial conference and throughout the trial, the court notes that there are two significant factors at issue in determining the percentage of fees that should be recoverable. First, there were only two claims that proceeded to trial, not five, and, second, the court's recollection of the pre-trial conference and trial is that about 80% of the discussion with the court, testimony, exhibits, and arguments dealt with the claim for breach of the Core Services Agreement. Accordingly, the court will award Peoples Bank 80% of its requested fees for this period of time. Again, based on the bills enumerated above, this totals $4,500 ($5,625 for 22.5 hours of Dallas Reynolds' time on December 2, 5, 6, and 7, 2016, times 80%).

Finally, for all of the pre-trial work, the court finds that Fiserv is entitled to 55% of its

requested fees. This percentage is based on the court's finding that 1) the claims in this action were not all of equal significance in this case, and the court is of the impression from counsel that disagreement about the Core Services Agreement generated the bulk of the underlying dispute between the parties. Therefore, the court finds that the legal work was at least 65% attributable to understanding the dispute arising from this agreement. Meanwhile, the court finds that the other three contract-based claims are associated with no more than 10% each of the remaining legal work in this case, and that only 5% of the work was aimed at developing the claim for breach of the covenant of good faith and fair dealing (which overlapped with the other contractual claims and required no factual development of its own). The court then reduces recovery for this portion of the litigation from 65% to 55% by subtracting 10% for the work that related to the EFT agreement claim, on which Fiserv was successful and Fiserv has persuasively shown that it has a claim for attorney's fees equaling at least the value of the fees incurred by Peoples Bank. As a result, the court will award Peoples Bank 55% of its requested fees related to the period in time prior to the pre-trial conference.

Before determining the final amount of fees to be awarded for pretrial work, however, the court notes that Fiserv's argument is well taken that duplicative fees for overlapping work between Mr. Troutman and Dallas Reynolds should not be awarded. To this end, the court identifies the billing entries for Dallas Reynolds's work between February and June of 2016 as work done by Dallas Reynolds that involved reviewing work previously done by Mr. Troutman, and those fees will not be included in the final calculation. The amount of pre-trial fees that will, then, be awarded is $13,516.25 ($11,825 for the remaining 47.3 hours of Dallas Reynolds' fees for July, November, and December of 2016, plus Mr. Troutman's fees of $12,750 (totaling $24,575), times 55%).

Finally, all requested expenses (including paralegal fees) will be awarded because, based on the court's review of these expenses, the court finds that these expenses would have been incurred in relation to the claim for breach of the Core Services Agreement, irrespective of whether the other claims had also been at issue. The total awarded expenses will be $6,220.62 ($455 for seven hours of paralegal fees plus $5,765.62 in expenses as enumerated in Exhibit A to Reynolds Decl. 1 and Exhibit A to the Troutman Declaration).

Accordingly, the finds that Peoples Bank is entitled to in attorney's fees and costs in the total amount of $29,473.87 ($13,516.25 for 55% of the fees charged by Mr. Troutman and Dallas Reynolds for non-duplicative pre-trial work, plus $4,500 for 80% of the fees charged by Dallas Reynolds for the pretrial-conference and trial, plus $5,237 for fees charged for post-trial and appellate work by Dallas Reynolds, plus $455 in paralegal fees, plus $5,765.62 in expenses).

## **CONCLUSION**

For the foregoing reasons, Peoples Bank's Motion for Attorney's Fees will be granted in part and denied in part and the court will award only the above fees and costs.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge